UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JEROME WITHERSPOON,

                    Petitioner,

            -against-

JOHN COLVIN,

                   Respondent.
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
18-CV-4816 (LDH) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

    In November 2013, *pro se* Petitioner Jerome Witherspoon ("Petitioner" or "Witherspoon") was convicted in New York Supreme Court, Queens County, and sentenced to twenty-two years to life imprisonment. He brings this petition for habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his conviction. (*See* Petition for Writ of Habeas Corpus ("Pet. for Writ"), ECF No. 1.) Witherspoon claims he is being held in violation of the Constitution or laws of the United States on two main grounds. First, he claims that he was deprived of his constitutional right to autonomy by his trial counsel's refusal to present a justification defense. Second, he argues that he suffered ineffective assistance of counsel as a result of his trial counsel's (1) failure to investigate or present a justification defense; (2) failure to guard against inadmissible evidence; and (3) embarking on a prejudicial course of conduct, and that the ineffective assistance was compounded due to the cumulative effects of these errors by counsel. The Honorable LaShann DeArcy Hall referred the instant petition to the undersigned Magistrate Judge for a report and recommendation.

    For the reasons set forth below, the Court respectfully recommends that the petition be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.    State Court Procedural History

#### A.  Shooting, Arrest, and Pre-Trial Proceedings

In the early morning hours of October 14, 2012, Witherspoon shot eighteen-year-old Shawn Bryant ("Bryant") in a basement during a house party in Queens. (*See* State Court Record ("S.R."), ECF No. 9-3, at 7–8, 159.)[1] Bryant and Witherspoon were both dancing, Bryant bumped into Witherspoon, a "tussle" or "scuffle" ensued, and Witherspoon shot Bryant in the leg. (*See* State Court Transcript ("Tr."), ECF No. 9-5, at 360:11–361:25, 386:7–25, 405:1–4.) Witherspoon was arrested on October 17, 2012, and after being read his *Miranda* warnings, indicated that he did not want to answer questions. (*Id.* at 469:20–25, 484:9–485:20.) Shortly thereafter, Witherspoon volunteered that "he had been at the party; that . . . somebody had stepped on his foot, and he had made a statement to the person," but that "he didn't shoot anybody." (*Id.* at 486:3–6.) The same day, Bryant identified Witherspoon in a lineup at the precinct. (*Id.* at 404:14–16, 492:10–14.)

Prior to trial, on May 30, 2013, the state court held a suppression hearing as to two inculpatory statements Witherspoon made after his arrest. (*See id.* at 23–45; *see also* S.R., ECF No. 9-3, at 111; Resp't's Mem. of Law in Opp'n ("Resp't's Opp'n"), ECF No. 9-1, at 2–5.) Specifically, the prosecution sought to introduce Witherspoon's post-arrest statement that he had been at the house party, as well as a videotaped statement Witherspoon made the following day at Queens Central Booking, in which he admitted his guilt. (Resp't's Opp'n, ECF No. 9-1, at 2–5.) The court suppressed the latter

---

[1] The page numbers cited herein for the state court record and state court transcript refer to the CM/ECF page numbers printed in the upper right corner.

statement because it found that Witherspoon had properly invoked his right to counsel the day before after being advised of his *Miranda* rights. (*See id.* at 4–5.) In addition, on October 23, 2013, during a pre-trial hearing pursuant to *People v. Sandoval*, 34 N.Y.2d 371 (1974), the state court denied the prosecution's request to cross-examine Witherspoon about the facts underlying a prior conviction arising from two shootings, as well as a robbery conviction, were he to testify at trial. (Tr., ECF No. 9-5, at 57–64.)

## B.  Trial and Sentencing

Witherspoon's trial took place in the Queens County Supreme Court from October 29, 2013, until November 4, 2013, before Justice Kenneth C. Holder. (*See id.* at 320.) Witherspoon was charged with, among other things, attempted murder in the second degree. (*Id.* at 353:13–15.) At trial, Bryant testified that he "bumped into somebody" at the house party who then "drew the gun out and shot [him]," and identified Witherspoon as the shooter. (*Id.* at 360:16–17, 364:3–10.) Sergeant Steven Kells testified that he arrived at the house party on October 14, 2012, and saw approximately twenty-five people gathered in the backyard, including Bryant, who was lying on the ground, injured with a gunshot wound and calling for an ambulance. (*Id.* at 419:24–420:24.) Kells also stated that he saw a .40 caliber shell casing on the floor of the basement and a trail of blood leading to a room in the basement. (*Id.* at 422:17–20.)[2] Detective Barry Brown testified that he went to Jamaica Hospital to interview Bryant later that day, and Bryant told him the shooter was nicknamed "Spoon." (*Id.* at 462:21–23, 463:13–25.) Brown stated he next interviewed Brianna Smoot, one of the hosts of the house party, and then returned to the precinct and "ran computer checks on the

---

[2] Two .9 millimeter shell casings were also recovered outside the house the same night, approximately fifty feet away from the basement where the shooting occurred. (Tr., ECF No. 9-5, at 424:15–425:1.)

nickname Spoon." (*Id.* at 464:1–10, 465:3–7.) Brown testified that the computer check came back with two matches for the nickname Spoon, one of which fit Witherspoon's description, leading to Witherspoon's arrest. (*Id.* at 468:17–469:1, 469:16–25.)

During the trial, the prosecution also played several recordings of telephone calls Witherspoon made while he was in pre-trial detention at Rikers Island. (*Id.* at 541:10–544:23; S.R., ECF No. 9-3, at 315–45.) In these calls, Witherspoon discussed the shooting and suggested that he was acting in self-defense. (*See, e.g.*, S.R., ECF No. 9-3, at 320 ("It was like this it was either me or them it was that type of situation . . . ."); *id.* at 321 ("[S]o now his man come to the from the side but I already see the hammer in his waist so [I']m like oh I act like I didn't see it so I'm like yo that's your man, he like yeah what up . . . Yeah so I back up I didn't even know this man was behind me so no [I']m like oh shit so I guess he realized oh he on point son tried to grab me . . . ."); *id.* at 323 ("I'm not letting them boys put no hot ones in me so I had to do the squeezing first.").) In the calls, Witherspoon also gave directions about destroying a gun, which is referred to as an "iPhone," and indicated that he was prepared to serve time for his actions. (*See, e.g.*, *id.* at 316 ("[S]end that shit off you know I mean . . . You know I mean somewhere deep in the water . . . ."); *id.* at 317 ("I you know took apart the Iphone and all that took the main part you know I'm sayin . . . ."); *id.* at 319 ("I gotta do time I gotta do time. I hopin I can get like 12 years"); *id.* at 324 ("[T]hey got me . . . I ain't gon like [sic] they got me they got me . . . It[']s one of those they got me thats why I'm like lets go, give my time and lets go.").)

Witherspoon did not testify or present evidence at trial. (Tr., ECF No. 9-5, at 556:17–21; Pet. for Writ, ECF No. 1, at 1.) Near the conclusion of trial, his defense lawyer (referred to herein as "counsel," "defense counsel," or "trial counsel") twice moved for a mistrial arguing that the court erred in instructing the jury regarding whether it could

consider the recorded Rikers Island calls as evidence of Witherspoon's involvement in an uncharged crime, namely, an attempt to destroy evidence. (Tr., ECF No. 9-5, at 545:7–19, 554:3–11.) In addition, defense counsel moved for dismissal, arguing that the prosecution did not prove its case beyond a reasonable doubt. (*Id.* at 554:12–14.) On November 4, 2013, the jury found Witherspoon not guilty of attempted murder in the second degree, and guilty of assault in the first degree, two counts of criminal possession of a weapon in the second degree, assault in the second degree, and criminal possession of a weapon in the third degree. (*Id.* at 625:22–626:25.) On November 20, 2013, Witherspoon was sentenced to twenty-two years to life in prison. (*Id.* at 647:7–8.)

At his sentencing, Witherspoon told the court that he was "guilty with an explanation" and that, as he stated in his phone calls from Rikers Island, he did what he "had to do" because his "back was put up against the wall." (*Id.* at 641:8–642:6.) At sentencing, defense counsel also stated that "[w]hen Mr. Witherspoon was making those statements on the Riker[s] Island phone calls, there was no motive for him to make it up. He was simply . . . saying that there were three other people, at least two he saw with a gun. That was the only reason his gun came out." (*Id.* at 639:24–640:7.)

### C.  Direct Appeal

On February 25, 2014, Witherspoon filed a notice of appeal before the Supreme Court for the State of New York Appellate Division, Second Department. (*See* S.R., ECF No. 9-3, at 5.) On appeal, Witherspoon argued through newly appointed counsel that he was denied his constitutional rights to a fair trial and effective assistance of counsel because (1) his trial attorney failed to request a justification charge or guard against inadmissible evidence; and (2) because the trial court did not deliver a justification charge *sua sponte*. (*Id.* at 18–31.) Witherspoon also argued that the second-degree assault conviction was a lesser included offense of his first-degree assault conviction. (*Id.* at 31–

5

32.) Regarding inadmissible evidence, Witherspoon claimed he was prejudiced by trial counsel's failure to object to testimony about, *inter alia*, Witherspoon's nickname and criminal history. (*See id.* at 24–31.)[3]

In response, the district attorney argued that Witherspoon was not deprived of effective assistance of counsel or a fair trial, and that the trial court was not required to *sua sponte* instruct the jury on a justification charge. (*See id.* at 49–70.) Specifically, the district attorney argued that "the evidence did not show that Bryant's companion used or was about to use deadly physical force," and "even if the [justification] charge had been submitted to the jury, it had little chance of success." (*Id.* at 50.) The State also contended that the disputed testimony was "largely, if not solely, offered for non-hearsay purposes, and so any objections would likely have been fruitless." (*Id.* at 70.) The district attorney agreed, however, that the second-degree assault conviction should be set aside as a lesser included offense of the first-degree assault charge. (*Id.* at 80.)

On February 15, 2017, the Second Department vacated Witherspoon's conviction for assault in the second degree but otherwise affirmed the trial court's conviction and

---

[3] Specifically, Witherspoon raised the following list of errors on direct appeal: (1) "[C]ounsel interposed no objection to testimony by the complainant and case detective that, while at the hospital after the shooting, the complainant, who did not know the gunman's identity, told the detective that friends of his had told him that 'Spoon' — an easily-inferred nickname for someone named 'Witherspoon' — had shot him" (S.R., ECF No. 9-3, at 24); (2) "[D]efense counsel elicited the same testimony on cross-examination" (*id.*); (3) "Counsel . . . failed to object to testimony that the . . . [computer search results] matched the description [the detective] had gotten from the host of the party, Brianna Smoot," who did not testify at trial (*id.* at 25); (4) "Counsel . . . failed to guard against the harmful inference arising from the detective's testimony regarding his use of this hearsay, that appellant was in the police computer system because he had a criminal history" (*id.*); (5) "[C]ounsel [did not] request a charge limiting the jury's use of this testimony, leaving them free to infer from it that appellant had a prior criminal history" (*id.* at 26); (6) Defense counsel did not object to the preview of the computer search for Witherspoon's nickname in the prosecution's opening statement (*id.* at 27); (7) Defense counsel failed "to ask for additional redactions of the Criminal Court affidavit, which the prosecutor introduced so the jurors could infer that the mentions of an 'iPhone' in appellant's phone calls were coded references to the 'firearm' mentioned in the affidavit" (*id.*); and (8) Defense counsel failed to "recognize the bolstering aspect of the latter portion of the criminal court affidavit (that appellant shot the complainant twice, causing him to be wounded)" (*id.* at 29).

sentence. *See People v. Witherspoon*, 47 N.Y.S.3d 391, 393 (N.Y. App. Div. 2d Dep't 2017). The panel held that "the evidence, the law, and the circumstances of this case, viewed in totality and as of the time of the representation, reveal that trial counsel provided the defendant with meaningful representation," and that "no reasonable view of the evidence would support a finding that [Witherspoon's] actions were justified." *Id.* at 392. The Second Department also rejected Witherspoon's arguments that his trial counsel should have objected to more of the testimony surrounding the police investigation and computer search, finding that "[w]hile trial counsel should have requested a limiting instruction that this testimony should not be considered for its truth, this single error was not sufficiently egregious and prejudicial as to compromise the defendant's right to a fair trial, and, thus, did not render counsel's performance ineffective." *Id.* at 392–93 (citations omitted). Finally, the court held that Witherspoon's "contention that the Supreme Court should have instructed the jury with regard to the defense of justification is unpreserved for appellate review and, in any event, without merit." *Id.* at 393 (citations omitted).

On March 6, 2017, Witherspoon sought leave to appeal the Second Department's ruling with the New York Court of Appeals, which the district attorney opposed. (S.R., ECF No. 9-3, at 85–91.) On May 8, 2017, the Court of Appeals denied Witherspoon's application. *See People v. Witherspoon*, 29 N.Y.3d 1038 (2017).

### D. Post-Conviction Motion

On July 27, 2018, Witherspoon, proceeding *pro se*, filed a motion to vacate his conviction pursuant to N.Y. Criminal Procedure Law ("C.P.L.") § 440.10(1)(h). (S.R., ECF No. 9-3, at 93–109, 179–210.) In his motion, Witherspoon claimed that he was violently bumped into while dancing at the party, encircled by Bryant and his companions, and then made to fear for his life. (*Id.* at 95–98; *see also id.* at 181–84.) With

"no other choice than to defend himself by the use of force," Witherspoon "reached into his waistband, grabbed the firearm that he was carrying, pulled it out, and fired his gun one time towards the direction of the floor." (*Id.* at 98.) Witherspoon claimed that he was then chased out and shot at while running from the house party. (*Id.* at 99.)

Witherspoon stated that, in addition to informing the district attorney during his post-arrest interview that he "was provoked," he also conveyed the same account of the shooting described above to his defense counsel during their first meeting, and "instructed [defense counsel] to put on a justification defense, and that justification was the only defense [Witherspoon] wanted to pursue[.]" (*Id.* at 100, 101.) Witherspoon further claimed that on March 20, 2013, he inquired whether his defense counsel "had made progress in the investigation and preparation of his justification defense, and [defense counsel] informed [Witherspoon] that he would not be presenting any justification defense in his case," because "the evidence 'did not add up.'" (*Id.* at 102–03.) Witherspoon also asserted that in a May 30, 2013 meeting with defense counsel, he "demanded that [defense counsel] investigate and present a justification defense on his behalf." (*Id.* at 103.) However, Witherspoon claimed that by July 2013, he had "lost confidence in [his defense counsel's] representation," in part, because counsel "would not work towards establishing [Witherspoon]'s requested defense of justification," which contributed to Witherspoon's unsuccessful motion for reassignment of counsel. (*Id.* at 104.)[4] After the prosecution revealed the existence of the recorded Rikers Island

---

[4] After his suppression hearing but prior to trial, Witherspoon made a *pro se* motion for reassignment of counsel based on a purportedly "unprofessional statement" his defense lawyer made to him in reference to a plea offer. (Petr's Status Report ("Status Report"), ECF No. 3, at 27–31, 36.) Specifically, Witherspoon stated that counsel told him to "[t]ake the time because you're going to be in jail or dead." (*Id.* at 36:16–17.) The Honorable Barry Kron denied the motion. (*Id.* at 38:8.) However, Witherspoon noted that during the July 30, 2013 hearing on his motion for reassignment of counsel, Judge Kron "did not inquire about — or give

calls, Witherspoon claimed that counsel told him "that he did not have a viable justification defense." (*Id.* at 105.) Indeed, according to Witherspoon, "throughout the entire pretrial period, [defense counsel] refused to, and did not, investigate the . . . chosen defense of justification, as [Witherspoon] had directed him to do," nor did he present such a defense at trial. (*Id.* at 106–07.) Witherspoon indicated that his attempts to learn why his defense counsel felt a justification defense was unworkable had gone unanswered. (*Id.* at 108, 151–56.)

Accordingly, in his Article 440 motion, Witherspoon argued that his counsel "made numerous errors and embarked on a prejudicial course of conduct, which individually and collectively deprived [Witherspoon] of his right to a fair trial and his right to the effective assistance of counsel." (*Id.* at 106.) Notably, Witherspoon claimed that counsel disregarded his chosen defense and trial objective in failing to pursue a charge of justification, in contravention of his Sixth Amendment rights to effective assistance of counsel and autonomy. (*Id.* at 193–202 (citing, *inter alia*, *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018)).) Witherspoon also highlighted that at his sentencing, he told the trial judge that he was "guilty with an explanation." (*Id.* at 108; *see also* Tr., ECF No. 9-5, at 639:24–640:7, 641:8–642:6.)

In addition, Witherspoon contended that his counsel was ineffective for failing to rebut the claim that Bryant had been shot twice rather than once,[5] and for giving an "incoherent and prejudicial summation to the jury." (S.R., ECF No. 9-3, at 106–07; *see also id.* at 193–206; Tr., ECF No. 9-5, at 561–66.) Witherspoon also argued that the

---

[Witherspoon] the opportunity to explain — that portion of his motion concerning [counsel's] refusal and failure to investigate [Witherspoon]'s justification defense." (S.R., ECF No. 9-3, at 105.)

[5] Whether Witherspoon shot Bryant once or twice does not impact the Court's analysis of the claims Witherspoon raises in the instant petition.

cumulative effects of trial counsel's errors, including his failure to object to inadmissible evidence, deprived Witherspoon of the effective assistance to which he was entitled at trial. (S.R., ECF No. 9-3, at 206–08.) The district attorney's office filed its opposition to Witherspoon's Article 440 motion on October 2, 2018, arguing that Witherspoon received effective assistance of counsel and failed to state a legal basis entitling him to relief. (*See generally id.* at 211–55.)

Justice Kenneth C. Holder denied Witherspoon's motion to vacate his conviction on May 6, 2019. (*Id.* at 283.) The court concluded that "[a]lthough [Witherspoon] now claims that he wanted counsel to pursue a justification defense and did not acquiesce to counsel's strategic decision not to pursue that affirmative defense because the evidence did not support it," a potential justification defense "was not found when he raised the issue on appeal." (*Id.* at 289.) Further, the court found that because Witherspoon raised this claim in his direct appeal "and the appellate [court] rejected i[t] on the merits, that [such] claim is mandatorily barred from review in this motion." (*Id.* at 290 (citing C.P.L. § 440.10(2)(a)).) The court also held that Witherspoon's "motion papers overall fail to demonstrate exactly how [defense counsel's] failures would have changed the view of the evidence to support his use of deadly physical force under the circumstances," and that, "to the extent that several of [Witherspoon's] claims rely on matters that appear on the record of the proceedings below, they are mandatorily barred from review owing to his unjustifiable failure to raise them on his direct appeal." (*Id.* (citing C.P.L. § 440.10(2)(c)).) Lastly, the court concluded that "the record as a whole establishes that trial counsel's representation of [Witherspoon] was both meaningful and objectively reasonable." (*Id.* at 291.)

On May 17, 2019, Witherspoon moved for leave to appeal the denial of his Article 440 motion pursuant to C.P.L. §§ 450.15 and 460.15, which the district attorney opposed. (*See id.* at 292–313.) Witherspoon's application was denied on July 26, 2019. (*Id.* at 314.)

## II.   Habeas Corpus Petition

In the habeas petition currently before this Court,[6] Witherspoon raises five grounds on which he argues he is being held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). First, Witherspoon claims that because his trial counsel refused to present Witherspoon's "chosen defense of justification" at trial, he was deprived of the constitutional right to autonomy. (Pet. for Writ, ECF No. 1, at 4–6.) Second, Witherspoon argues that his trial counsel's performance deprived him of the constitutional right to effective assistance of counsel due to counsel's failure to investigate or present a justification defense at trial. (*Id.* at 6–10.) Third, Witherspoon asserts that his trial counsel's assistance was constitutionally deficient because counsel "embarked on a prejudicial course of conduct" during his summation at trial. (*Id.* at 10–12.) Fourth, Witherspoon claims that he received ineffective assistance of counsel because trial counsel failed to "guard against damaging, inadmissible evidence at trial."

---

[6] Witherspoon originally filed the instant petition on August 6, 2018, a few days after filing his Article 440 motion. (*See* Pet. for Writ, ECF No. 1, at 18.) As part of the filing, Witherspoon requested that the Court hold proceedings in abeyance "pending the resolution of his New York State Court post-conviction motion[.]" (*Id.* at 25 (stay request starting on page 25 of CM/ECF document).) Witherspoon explained that he was seeking additional documents in support of his Article 440 motion and "felt it necessary to submit this 'protective petition,' as he did not know whether the statute of limitations would run out . . . and, was unsure whether his claims would be properly exhausted in state court." (*Id.* at 27–28.) On August 30, 2018, Judge DeArcy Hall granted Witherspoon's request to stay all proceedings while he exhausted his administrative remedies and ordered him to notify the Court within thirty days of exhausting said remedies. (Aug. 30, 2018 ECF Order.) Following the denial of Witherspoon's application for leave to appeal the denial of his post-conviction motion on July 26, 2019, Witherspoon informed the Court on August 19, 2019 that he had exhausted his state court remedies. (*See* S.R., ECF No. 9-3, at 314; Status Report, ECF No. 3.) Accordingly, on September 5, 2019, Judge DeArcy Hall lifted the stay and construed the claim and exhibits attached to Witherspoon's August 19, 2019 Status Report as incorporated into the instant petition. (*See* Sept. 5, 2019 ECF Order.)

(*Id.* at 12–13.)[7] And <u>fifth</u>, Witherspoon contends that the "cumulative effects" of his trial counsel's errors resulted in a deprivation of the right to effective assistance of counsel. (*Id.* at 14–15.)

In opposition to Witherspoon's petition, Respondent argues, among other things, that the state court's rejection of Witherspoon's ineffective assistance of counsel claim should be afforded deference and that such claims are altogether without merit. (*See* Resp't's Opp'n, ECF No. 9-1, at 20–26, 28–32.) Respondent also contends that Witherspoon's Sixth Amendment autonomy claim is meritless. (*See id.* at 33–38.)

In his reply, Witherspoon addresses both the state court's denial of his Article 440 motion and Respondent's opposition to the instant petition. For example, Witherspoon claims that the state court erred in finding his ineffective assistance of counsel claim procedurally barred as part of his post-conviction motion. (*See* Pet'r's Reply in Supp. of Pet. for Writ ("Pet'r's Reply"), ECF No. 12, at 2, 6–7.) Witherspoon argues this is because, on appeal, he stated that his counsel was ineffective "for failing to <u>request</u> a jury-charge on justification," which "is not the same as arguing that counsel failed to <u>present</u> or <u>investigate</u> a justification defense," i.e., the claim he raised herein. (*Id.* (emphasis in original).)

Following the filing of Witherspoon's reply, Judge DeArcy Hall referred the instant petition to the undersigned Magistrate Judge for a report and recommendation. (*See* July 7, 2021 ECF Referral Order.) For the reasons discussed below, the Court recommends that the petition be denied.

---

[7] The Court notes that Witherspoon raised this ground in his Article 440 motion as part of his ineffective assistance of counsel claim based on the cumulative effect of counsel's errors, rather than as its own separate claim. (*See* S.R., ECF No. 9-3, at 206.)

## LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an individual in custody pursuant to a state court judgment may only bring an application for a writ of habeas corpus on the grounds that his custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts may grant habeas relief if a petitioner shows that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Williams v. Taylor*, 529 U.S. 362, 409–10 (2000).

A decision "involves an unreasonable application" of federal law where it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08. Therefore, a petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This is a "highly deferential standard," that requires that state court decisions "be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010); *see also Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015). However, federal courts maintain the "authority to issue the writ in cases where there is no possibility fairminded jurists could disagree

that the state court's decision conflicts with [the Supreme] Court's precedents."

*Harrington*, 562 U.S. at 102.[8]

## DISCUSSION

The Sixth Amendment guarantees certain procedural safeguards to individuals who have been charged with crimes, including "the Assistance of Counsel." U.S. Const. amend. VI; *see also United States v. Rosemond*, 958 F.3d 111, 119 (2d Cir. 2020) (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 379 (1979)), *cert. denied*, 141 S. Ct. 1057 (2021). In this case, Witherspoon argues that his defense counsel's representation before and during trial was constitutionally deficient, based on a number of alleged errors on the part of counsel. In light of the deferential review conducted by habeas courts and the high bar for demonstrating Sixth Amendment violations, as well as for the reasons set forth below, the Court respectfully recommends finding that Witherspoon has failed to establish that the state court determinations on his claims resulted in a decision that was contrary to or involved an unreasonable application of federal law. Moreover, the Court

---

[8] In addition, under AEDPA, a petitioner must file a federal habeas corpus petition challenging a state court judgment within one year of when that judgment becomes final. 28 U.S.C. § 2244(d)(1)(A); *see also Velazquez v. Poole*, 614 F. Supp. 2d 284, 300 (E.D.N.Y. 2007). In addition, "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2). Here, Witherspoon's judgment of conviction became final on August 7, 2017, ninety days after the New York Court of Appeals denied Witherspoon's application for leave to appeal. *See People v. Witherspoon*, 29 N.Y.3d 1038 (2017). As noted above, Witherspoon originally filed the instant petition on August 6, 2018. (*See* Pet. for Writ, ECF No. 1, at 19.) Thus, the petition is timely.

Further, "a state prisoner is required to exhaust all of his available state remedies before a federal court can consider his habeas application." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (citing 28 U.S.C. § 2254(b)(1)(A)). "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Id.* (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)). Here, it is "clear from the record that [P]etitioner presented the primary claims that are the subject of his [petition] in state court on direct appeal and/or on a motion to vacate his sentence," and therefore has properly exhausted his state remedies. *Velazquez*, 614 F. Supp. at 300 (citing *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982)).

recommends concluding that Witherspoon has also failed to establish that he suffered a cognizable deprivation of his Sixth Amendment rights to autonomy and effective assistance of counsel.

## I.    Petitioner's Autonomy Claim

The choice to be represented is not "all or nothing." *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018). As the Supreme Court explained in *McCoy*, a defendant who chooses to be assisted by an attorney does not "surrender control entirely to counsel." *Id.* Thus, the Sixth Amendment "contemplat[es] a norm in which the accused, and not a lawyer, is master of his own defense." *DePasquale*, 443 U.S. at 382 n.10 (citing *Faretta v. California*, 422 U.S. 806, 819–20 (1975)). "Trial management," however, "is the lawyer's province." *McCoy*, 138 S. Ct. at 1508. As a threshold matter in this case, the Court is not persuaded that *McCoy* applies retroactively on collateral review. And even if it did, Witherspoon has not established that the state court's determination to reject his *McCoy* claim was unreasonable; indeed, he cannot establish a viable autonomy claim under the Sixth Amendment. Accordingly, the Court recommends denying Witherspoon's autonomy claim in its entirety.

### A.    *McCoy* Does Not Apply Retroactively to Petitioner

The Supreme Court has "repeatedly stated that a decision announcing a new rule of criminal procedure ordinarily does not apply retroactively on federal collateral review." *Edwards v. Vannoy*, 141 S. Ct. 1547, 1551 (2021). Rather, such a rule may apply retroactively "only if it constitutes a 'watershed' rule of criminal procedure." *Id.* at 1555 (citing *Teague v. Lane*, 489 U.S. 288, 311 (1989)). In *Vannoy*, the Supreme Court recently cautioned that "[a]t this point, some 32 years after *Teague* . . . no new rules of criminal procedure can satisfy the watershed exception," and that, as a result, the Supreme

Court "cannot responsibly continue to suggest otherwise to litigants and courts." *Id.* at 1559.

*McCoy* was decided on May 14, 2018, approximately nine months after Witherspoon's conviction became final. *See McCoy*, 138 S. Ct. at 1500; *Witherspoon*, 29 N.Y.3d at 1038.[9] Nevertheless, Witherspoon now seeks to rely on the Supreme Court's ruling in that case in order to argue that his Sixth Amendment right to autonomy was violated at trial.[10] (*See* Pet'r's Reply, ECF No. 12, at 3, 16.) However, in accordance with *Teague*, *Vannoy*, and their progeny, the Court finds no basis to apply *McCoy* retroactively here. *See Christian v. Thomas*, 982 F.3d 1215, 1225 (9th Cir. 2020); *Pennebaker v. Rewerts*, No. 21-1216, 2021 WL 7237920, at *3 (6th Cir. Sept. 10, 2021)[11]; *Smith v. Stein*, 982 F.3d 229, 235 (4th Cir. 2020); *United States v. Krasniqi*, No. 10-CR-464 (GHW) (GWG), 2022 WL 1739142, at *8 (S.D.N.Y. May 31, 2022), *report and recommendation adopted*, No. 10-CR-464 (GHW), 2022 WL 2663826 (S.D.N.Y. July 8, 2022); *Castro v. United States*, No. 18-CV-11833 (FLW), 2021 WL 3047044, at *4 n.3 (D.N.J. July 20, 2021).

## B. Petitioner's Autonomy Claim Fails Under *McCoy*

Even assuming, *arguendo*, that *McCoy* applies in this case, the Court finds that the state court's adjudication of his *McCoy* claim was sound and should not be disturbed. In

---

[9] The Court notes that, pursuant to Rule 13 of the Rules of the Supreme Court of the United States, the deadline for Witherspoon to seek review of the New York Court of Appeals's May 8, 2017 denial of his application for leave to appeal was ninety days later, on August 7, 2017. *See* Sup. Ct. R. 13.1; *Witherspoon*, 29 N.Y.3d at 1038. Witherspoon did not file a petition for certiorari in the U.S. Supreme Court. (*See* Pet. for Writ, ECF No. 1, at 4.) Accordingly, as discussed above (*supra* note 8), Witherspoon's conviction became final on August 7, 2017, several months before the Supreme Court issued its decision in *McCoy*.

[10] For purposes of this analysis, the Court assumes without deciding that "*McCoy* did indeed create a new rule of constitutional law and that it was previously unavailable to [Witherspoon]." *Christian v. Thomas*, 982 F.3d 1215, 1222 (9th Cir. 2020).

[11] Upon written request, Petitioner will be provided copies of all unpublished opinions cited in this Report and Recommendation. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

*McCoy*, the Supreme Court clarified that a defendant in a criminal case has a "protected autonomy right" to make "fundamental choices about his own defense," including the "[a]utonomy to decide that the objective of the defense is to assert innocence." *McCoy*, 138 S. Ct. at 1508, 1511. Fundamental choices, like a decision "to plead guilty, waive the right to a jury trial, testify in one's own behalf, [or] forgo an appeal," are "reserved for the client." *Id.* at 1508 (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). The Supreme Court explained: "These are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*." *Id.* (emphasis in original) (citing *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017)). Applying these principles, the Supreme Court granted McCoy a new trial after his counsel conceded guilt — over McCoy's express objection — during the guilt phase of his capital trial. *Id.* at 1511–12. The Court found that "[s]uch an admission blocks the defendant's right to make the fundamental choices about his own defense." *Id.* at 1505–07, 1511.

Here, Witherspoon argues that counsel's "refusal to investigate and/or present [his] chosen defense of justification deprived [Witherspoon] of his right to chart the course of his own defense, and his right to cho[o]se the objective of his defense." (*See* Pet. for Writ, ECF No. 1, at 6; *see also* S.R., ECF No. 9-3, at 194.) In opposition, Respondent argues that Witherspoon's objective, shared by his counsel, was Witherspoon's acquittal, and that "[c]ounsel, not [P]etitioner, was responsible for the strategy for achieving that objective." (Resp't's Opp'n, ECF No. 9-1, at 35.)

As discussed above, the Sixth Amendment right of autonomy relates to "fundamental choices" such as deciding whether to plead guilty or to testify, whereas strategic or tactical choices about how best to navigate one's defense during a trial "is the lawyer's province." *McCoy*, 138 S. Ct. at 1508 (citing *Gonzalez v. United States*, 553 U.S. 242, 248 (2008)). As the *McCoy* court observed, decisions that fall within counsel's

domain include "'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" *Id.* (quoting *Gonzalez*, 553 U.S. at 248 (quotation marks and citations omitted in *McCoy*)).

In this case, Witherspoon's preference for a justification defense is more accurately classified as a strategic choice about how best to achieve his ultimate objective of acquittal, rather than an objective in and of itself. *See Yannai v. United States*, 346 F. Supp. 3d 336, 344 (E.D.N.Y. 2018) ("While the decision to contest guilt is squarely within the client's control, the question of *how* to present an argument of innocence is not[.]" (internal citation omitted)); *cf. People v. McManus*, 67 N.Y.2d 541, 546 (1986) (explaining that the defense of justification "does not operate to excuse a criminal act, nor does it negate a particular element of a crime. Rather, by recognizing the use of force to be privileged under certain circumstances, it renders such conduct entirely lawful"). As the state court explained, Witherspoon's case did not implicate "the defendant's fundamental decision whether or not to admit his guilt," but rather, a differing view on "the strategy of how to achieve" the shared objective of "outright acquittal." (S.R., ECF No. 9-3, at 289.) In addition, the state court observed that "the availability of a justification defense based on the evidence was not found when [Witherspoon] raised the issue on appeal," as the Second Department specifically found that "no reasonable view of the evidence . . . would support a finding that [Witherspoon's] actions were justified." (*Id.*)

Based on the record, the Court concurs that Petitioner's trial counsel did not "usurp[] control of an issue within Witherspoon's sole p[r]erogative," but rather, made a tactical choice in pursuit of their shared objective of acquittal. (*Id.* at 194, 263, 280.) As the Second Circuit has noted, "defendants necessarily relinquish some autonomy to their attorneys." *Rosemond*, 958 F.3d at 119 (citing *Taylor v. Illinois*, 484 U.S. 400, 418

(1988)). Generally speaking, "the client must accept the consequences of the lawyer's decision," including a decision to, for instance, "forgo cross-examination, to decide not to put certain witnesses on the stand, or to decide not to disclose the identity of certain witnesses in advance of trial." *Taylor*, 484 U.S. at 418.

Therefore, even if *McCoy* applied retroactively, the Court would recommend denying Witherspoon's autonomy claim as he has failed to establish that the state court's determination on this claim was contrary to federal law or unreasonable. He has also failed to establish that his counsel's determination not to pursue a justification defense rose to the level of a Sixth Amendment autonomy violation. *See Rosemond*, 958 F.3d at 123 (denying autonomy claim where defendant and attorney "shared the same goal: acquittal"); *see also Messina v. United States*, No. 11-CR-31 (KAM), 2020 WL 4194533, at *24 (E.D.N.Y. July 21, 2020) (denying defendant's autonomy claim when his counsel requested a *Fatico* hearing without consulting him); *Williams*, 529 U.S. at 409–10.

## II.    Petitioner's Ineffective Assistance of Counsel Claims

### A.  Procedural Bars to Reviewing Petitioner's Claims

As an initial matter, the Court briefly addresses whether elements of Witherspoon's ineffective assistance of counsel claims are procedurally barred from review in light of the state court's finding, in connection with Witherspoon's motion to vacate, that such claims were "mandatorily barred" pursuant to C.P.L. § 440.10(2)(a), (c). (*See* S.R., ECF No. 9-3, at 290.)[12] However, as discussed below, because the Court

---

[12] Subsection 440.10(2)(a) states in relevant part that the state court "must deny a motion to vacate a judgment when . . . [t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment . . . ." N.Y. Crim. Proc. § 440.10(2)(a) (2021). Subsection 440.10(2)(c) states in relevant part that the state court:

> [M]ust deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or

ultimately recommends denying Witherspoon's ineffective assistance of counsel claims on the merits, it is unnecessary to dwell upon the potential consequences of any relevant procedural bars. *See McNeil v. New York*, No. 12-CV-788 (LDH), 2021 WL 2986412, at *3 n.2 (E.D.N.Y. July 15, 2021).

      1.  <u>Applicable Law</u>

      A state prisoner's procedural default in the state courts may bar federal review when "the state court's rejection of a federal claim rests on a state law ground — such as the operation of a state procedural rule — that is both 'independent of the federal question and adequate to support the judgment.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quotation marks omitted) (quoting *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008)); *see also Lee v. Kemna*, 534 U.S. 362, 375 (2002); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). In such cases, "[t]he preclusion of federal review applies only when 'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" *Messiah v. Duncan*, 435 F.3d 186, 195 (2d Cir. 2006) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)); *see also Garner v. Lee*, 908 F.3d 845, 859 (2d Cir. 2018); *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 118 (2d Cir. 2015). In addition, a federal court should determine whether the state procedural rule implicated "is firmly established and regularly followed." *Clark*, 510 F.3d at 391. However, in exceptional cases, "the 'exorbitant application of a generally sound rule renders the state ground inadequate' and will not prevent a federal court's consideration of the federal question presented." *Fulton v. Graham*, 802 F.3d 257, 262 (2d

---

        issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]

N.Y. Crim. Proc. § 440.10(2)(c) (2021).

Cir. 2015) (quoting *Kemna*, 534 U.S. at 376); *see also Spencer v. Capra*, No. 17-CV-2179 (BMC), 2021 WL 2685226, at *5 (E.D.N.Y. June 30, 2021). Further, when there is "ambiguity" in a state court opinion that prevents the habeas court from "'definitively concluding that' the state court relied on a state procedural bar," the court "will presume that the state court resolved the decision on the merits and that [the habeas court is] not precluded from reviewing the claim's merits." *Garner*, 908 F.3d at 859 (quoting *Messiah*, 435 F.3d at 196).

      2.  <u>Analysis</u>

      Here, in denying Witherspoon's motion to vacate, the state court held that because Witherspoon "specifically raised the ineffective-assistance-of-counsel claim on his direct appeal based on the failure to request a justification charge and the appellate [court] rejected i[t] on the merits, that claim is mandatorily barred from review" pursuant to C.P.L. § 440.10(2)(a). (S.R., ECF No. 9-3, at 290.) Furthermore, the state court concluded that "to the extent that several of [Witherspoon's other ineffective assistance of counsel] claims rely on matters that appear on the record of the proceedings below, they are mandatorily barred from review owing to his unjustifiable failure to raise them on his direct appeal," pursuant to C.P.L. § 440.10(2)(c). (*Id.*)

      "Although a Section 440.10(2)(a) ruling might not constitute a finding of procedural default that bars federal *habeas* review, a Section 440.10(2)(c) ruling does, unless the petitioner can demonstrate 'either cause and actual prejudice, or that he is actually innocent.'" *Velez v. Lee*, No. 10-CV-3402 (PKC), 2017 WL 1288663, at *6 (E.D.N.Y. Apr. 6, 2017) (quoting *Perez*, 510 F.3d at 393).[13] Additionally, as noted above,

---

      [13] As the Honorable Pamela K. Chen noted in *Velez*, there is some disagreement among courts in this district as to whether the Second Circuit's holding in *Silverstein v. Henderson* still applies post-AEDPA. *See* 706 F.2d 361, 368 (2d Cir. 1983) (concluding that a state court's denial

"ambiguity" in the state court's reliance on a procedural bar may enable the habeas court to review the merits of a petitioner's claims. *Garner*, 908 F.3d at 859.

In this case, Witherspoon argues that the state court's application of procedural bars was "exorbitant" because (1) his ineffective assistance claim based on counsel's supposed failure to investigate or present a justification defense is "distinct and different from the ineffective assistance claim raised on appeal," and thus was not barred under § 440.10(2)(a); and (2) that his ineffective assistance claim related to counsel's prejudicial summation was a "mixed claim," and thus not barred under § 440.10(2)(c). (Pet'r's Reply, ECF No. 12, at 6–9.)

The Court first notes that Respondent appears to allege procedural default only with respect to Witherspoon's ineffective assistance of counsel claim based on trial counsel's summation remarks. (*See* Resp't's Opp'n, ECF No. 9-1, at 26–28.) *See also Velez*, 2017 WL 1288663, at *6. With respect to this claim, the Court finds that the state court's conclusion pursuant to § 440.10(2)(c) was somewhat ambiguous. (S.R., ECF No. 9-3, at 290 (holding that "to the extent that several of these claims rely on matters that appear on the record of the proceedings below, they are mandatorily barred from review," without specifying which of Witherspoon's ineffective assistance of counsel claims it was referencing).) *See Garner*, 908 F.3d at 859–60.

Due to the arguable ambiguity as to the exact basis for the state court denial of each element of Petitioner's ineffective assistance of counsel claims and his argument that he is presenting a "mixed claim," the Court has reviewed all of Petitioner's claims

---

under § 440.10(2)(a) is not a procedural default precluding federal review); *Velez*, 2017 WL 1288663, at *6. *See also Capra*, 2021 WL 2685226, at *4; *id.* at 4 n.2; *Mitchell v. Griffin*, No. 17-CV-5584 (KAM), 2019 WL 6173788, at *6 (E.D.N.Y. Nov. 20, 2019), *certificate of appealability denied*, No. 19-4196, 2020 WL 3168254 (2d Cir. May 13, 2020); *Bethea v. Walsh*, No. 09-CV-5037 (NGG), 2016 WL 258639, at *12 (E.D.N.Y. Jan. 19, 2016).

on the merits and does not recommend denying the petition on the basis of procedural default.[14] Further, as discussed herein, the Court construes Witherspoon's claim that his counsel was ineffective for failing to *investigate* or *present* a justification defense as somewhat distinct from the claim that his counsel was ineffective for failing to *request* a justification charge at trial, and finds that Petitioner argued both of these theories in his Article 440 petition. (*See* Pet'r's Reply, ECF No. 12, at 2, 6–7; S.R. ECF No. 9-3, at 106–07.) *Cf. D'Attore v. LaManna*, No. 18-CV-7017 (JMF), 2019 WL 2647493, at *2 (S.D.N.Y. June 27, 2019) (explaining that "a habeas petition filed by a *pro se* prisoner must be "'review[ed] . . . with a lenient eye'" (alteration in original) (quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983))); *see also Mingo v. Ercole*, No. 08-CV-4818 (KAM), 2010 WL 4941483, at *3 (E.D.N.Y. Nov. 30, 2010).

Given that there is "a presumption against finding a state procedural bar in cases of doubt," the Court now turns to the merits of Witherspoon's claims. *Garner*, 908 F.3d at 859. For the reasons set forth below, the Court recommends finding that Witherspoon has not established that he suffered ineffective assistance of counsel, and that he is therefore not entitled to habeas relief on that basis.

---

[14] The Court notes, for example, that the state court did not expressly address Witherspoon's "cumulative error" argument or his claim that trial counsel failed to guard against inadmissible evidence at trial. (S.R., ECF No. 9-3, at 290.) Rather, the court stated that "while defendant has specified several other alleged failures of counsel that he contends deprived him of the effective assistance of counsel," his ineffective assistance of counsel claim "as stated does not entitle him to legal relief." (*Id.*) In addition, to the extent that some of Witherspoon's "allegations of ineffectiveness involve matters appearing on the [trial] record, while others involve matters that are outside the record," such as his out-of-court conversations with counsel, Witherspoon has "presented a 'mixed claim' of ineffective assistance." *Pierotti v. Walsh*, 834 F.3d 171, 178 (2d Cir. 2016) (quoting *People v. Maxwell*, 933 N.Y.S.2d 386, 388 (N.Y. App. Div. 2d Dep't 2011)). Such claims, when presented in an Article 440 motion are not procedurally barred, and the 440 proceeding is "the appropriate forum for reviewing the claim of ineffectiveness in its entirety." *Id.*

**B. Petitioner's Ineffective Assistance of Counsel Claims Fail**

1. Applicable Law

The standard for establishing ineffective assistance of counsel is "'rigorous' and 'presents a high bar' because courts apply 'a presumption of effective performance.'" *United States v. Melhuish*, 6 F.4th 380, 393 (2d Cir. 2021) (quoting *United States v. Nolan*, 956 F.3d 71, 79 (2d Cir. 2020)). Under the framework set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), there are two prongs for establishing ineffective assistance of counsel, "one focusing on attorney performance and the other on prejudice." *Melhuish*, 6 F.4th at 393. An individual must first demonstrate that "'in light of all the circumstances,' the acts or omissions of trial counsel 'were outside the wide range of professionally competent assistance.'" *Nolan*, 956 F.3d at 79 (quoting *Strickland*, 466 U.S. at 690). The Second Circuit has noted that "[a]ctions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009). However, establishing that counsel made, for example, "omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness," may be sufficient to satisfy this first prong. *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (alteration omitted).

Second, an individual must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Melhuish*, 6 F.4th at 393. The ineffective assistance of counsel standard "does not require certainty that the result would have been different." *DeLuca v. Lord*, 77 F.3d 578, 590 (2d Cir. 1996); *see also Mazzuca*, 570 F.3d at 502 ("[A] 'reasonable probability' of a different result is a 'probability sufficient to undermine confidence in the outcome.'" (quoting *Strickland*, 466 U.S. at 694)). To establish the second prong of the *Strickland* test,

24

"the likelihood of a different result in the absence of the alleged deficiencies in representation 'must be substantial, not just conceivable.'" *Garner*, 908 F.3d at 849 (quoting *Harrington*, 562 U.S. at 112).

In addition, in the context of federal habeas review, the relevant inquiry for evaluating claims of ineffective assistance of counsel is "different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," and federal courts must afford a "deference and latitude that are not in operation when the case involves a review under the *Strickland* standard itself." *Id.* The Supreme Court has affirmed that this is "'meant to be' a difficult standard to meet." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (per curiam) (quoting *Harrington*, 562 U.S. at 102); *see also Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam).

2. <u>Analysis</u>

As noted above, Witherspoon identifies four main grounds for his ineffective assistance of counsel claims: (1) counsel's failure to investigate or present a justification defense; (2) counsel's delivery of prejudicial summation remarks at trial; (3) counsel's failure to guard against the introduction of damaging, inadmissible evidence; and (4) the cumulative effects of counsel's errors. (Pet. for Writ, ECF No. 1, at 6–15.)[15] As discussed below, the Court recommends finding that each of these arguments is

---

[15] For the second and fourth grounds of Witherspoon's ineffective assistance claim, he also argues that he was deprived of a fair trial. (Pet. for Writ, ECF No. 1, at 10, 14.) "While '[t]he Constitution guarantees a fair trial through the Due Process Clauses, . . . it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment.'" *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010) (alterations in original) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006)); *see also Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). Because Witherspoon's claims here are firmly rooted in the Sixth Amendment's guarantee of assistance of counsel, the Court analyzes his argument that he was deprived of a fair trial through that prism. *See Strickland*, 466 U.S. at 687.

without merit. Accordingly, because the Court does not find that Witherspoon has demonstrated ineffective assistance or shown that the state courts' adjudication of his Sixth Amendment ineffective assistance of counsel claim constituted an unreasonable application of federal law, this claim should be denied.

### a) Petitioner's Justification Claim

The crux of the first aspect of Witherspoon's ineffective assistance of counsel claims is that his counsel substantially prejudiced the fairness and outcome of his trial by failing to pursue a justification defense on his behalf. (*See id.* at 6–9.) More specifically, Witherspoon alleges that defense counsel failed to properly investigate the viability of a justification defense, or to present such a defense at trial. (*See id.* at 7–8.) Beginning with Witherspoon's claim that counsel did not adequately investigate a possible defense of justification, the Court finds this claim to be without merit.

### i. *Failure to Investigate Justification Defense*

While a "[f]ailure to conduct adequate pretrial investigations may serve as the basis for ineffective assistance of counsel claims," a decision to not investigate "must be assessed in light of the totality of the circumstances," and counsel's judgments are afforded a "heavy measure of deference." *Heron v. Griffin*, No. 18-CV-0004 (JFB), 2019 WL 1050011, at *13 (E.D.N.Y. Mar. 5, 2019) (citing *Strickland*, 466 U.S. at 690–91). In order to prevail on such a claim, the petitioner "has the 'burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'" *Id.* (quoting *Taylor v. Poole*, No. 07-CV-6318 (RJH) (GWG), 2009 WL 2634724, at *14 (S.D.N.Y. Aug. 27, 2009)). However, there is a "general rule" that "undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation [are] insufficient to satisfy either *Strickland* prong." *Paige v. Lee*, 99 F. Supp. 3d 340, 349 (E.D.N.Y. 2015) (quoting *Powers v. Lord*, 462 F. Supp. 2d 371, 381

26

(W.D.N.Y. 2006)); *see also Madarikan v. United States*, No. 95-CV-2052 (SJ), 1997 WL 597085, at *1 (E.D.N.Y. Sept. 24, 1997) (denying allegations of ineffective assistance that were "conclusory" and gave "no indication as to what exculpatory evidence may have been revealed by an investigation").

In this case, Witherspoon does not argue that his defense counsel made no investigation. Rather, according to Witherspoon's own characterization, counsel looked into the prospects of pursuing a justification defense and affirmatively declined to pursue it further. (*See* Pet. for Writ, ECF No. 1, at 5 (stating that counsel "informed Petitioner that he would not be presenting any justification defense because his alleged investigation showed that Petitioner's claims did not 'add up'"); *id.* at 7 ("[Counsel] told the Petitioner that after conducting an investigation into the facts of the case, he would not be presenting a defense of justification because the evidence did not 'add up.'"); *see also* S.R., ECF No. 9-3, at 102, 186 (stating the same).)

Witherspoon instead argues that "had counsel actually conducted a *thorough* investigation, as he had claimed, he would have found ample evidence supporting a defense of justification." (Pet. for Writ, ECF No. 1, at 7 (emphasis added).) Specifically, Witherspoon claims that counsel had access to the following pieces of evidence, which could have bolstered his justification defense: (1) Witherspoon's testimony; (2) the single .40 caliber shell casing found in the basement; (3) the two .9 millimeter shell casings found outside the house; (4) medical records related to the victim's injury that purportedly show the victim was moving toward Witherspoon at the time of the shooting; (5) testimony of the victim's treating physician; and (6) Witherspoon's recorded calls from Rikers Island. (*Id.*)

However, Witherspoon does not explain how a more in-depth investigation into this evidence would have changed the calculus on a potential justification charge. *See*

*Yik Man Mui v. United States*, No. 99-CV-3627 (SJ) (RER), 2013 WL 6330661, at *8 (E.D.N.Y. Dec. 5, 2013) (rejecting ineffective assistance of counsel claim for failure to examine evidence where the petitioner "fail[ed] to offer any support for his claim that these were 'critical' pieces of evidence" and explaining that "[j]ust because [trial counsel] did not pursue a strategy [petitioner] now believes might have been successful does not mean that [trial counsel] was ineffective or that his decisions were anything other than tactical"). For example, though the single .40 caliber shell casing found in the basement could show that Witherspoon fired his gun on the dance floor, and potentially just one time, it does not necessarily help to demonstrate that Witherspoon was defending himself. Similarly, Witherspoon's arguments that Shawn Bryant's medical records or testimony from Bryant's treating physician could have established that Bryant was moving toward Witherspoon at the time of the shooting — or that the two shell casings found outside the house could have established there were other guns near the premises — also fail to satisfy the relevant standard. (*See* Pet. for Writ, ECF No. 1, at 7.) Without more, these claims only offer speculation as to what would have been produced by further investigation. *See Poole*, 2009 WL 2634724, at *14 ("[A] petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation[.]").

Further, Witherspoon does not substantiate his assertions with a showing that defense counsel's additional investigation could have yielded anything apart from what counsel already knew and considered at the time. *See Curry v. Burge*, No. 03-CV-0901 (LAK) (AJP), 2004 WL 2601681, at *31 (S.D.N.Y. Nov. 17, 2004) (rejecting a claim for failure to investigate when there was "no way to know that trial counsel did not consider investigating these claims but simply rejected them as being unpromising"), *report and recommendation adopted*, No. 03-CV-0901 (LAK), 2005 WL 106490 (S.D.N.Y. Jan.

28

19, 2005); *see also Ortiz v. Heath*, No. 10-CV-1492 (KAM), 2011 WL 1331509, at *12 (E.D.N.Y. Apr. 6, 2011) (denying a claim for failure to investigate where "petitioner provide[d] no indication as to whether the medical professionals . . . would have appeared at trial and, if so, what potentially exculpatory evidence they could have provided").

Finally, as to Witherspoon's claim that counsel neglected Witherspoon's own testimony and crafted prejudicial arguments in light of the Rikers Island recordings (Pet. for Writ, ECF No. 1, at 7–8), these allegations fail because Witherspoon has not "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. State of La.*, 350 U.S. 91, 101 (1955)). First, as to Witherspoon's testimony, he decided, together with his counsel, not to rely on his own testimony at trial. (*See* Tr., ECF No. 9-5, at 555.) Second, with respect to the Rikers Island recordings, Witherspoon appears to suggest that his trial counsel should have conceded that Witherspoon shot the victim based on his statements in the recordings, and then generated a justification defense. (*See* Pet. for Writ, ECF No. 1, at 8 ("The jury heard, from Petitioner's own mouth, that he had shot the victim, and, there was no evidence in the record that could have supported counsel's prejudicial claim to the jury that the victim shot himself.").) However, given the dearth of evidence available to support a justification defense, counsel's decision for dealing with the recordings in the manner that he did cannot be construed as unreasonable trial strategy. The Court declines to "now 'use hindsight to second-guess [counsel's] strategy choices,'" and finds that such choices, including whether to have Witherspoon testify, with all of the associated risks inherent in doing so, should be afforded deference. *Sessoms v. United States*, No. 14-CV-6658 (FB), 2017 WL 2861669, at *2 (E.D.N.Y. July 5, 2017) (alteration in original) (quoting *Mayo v. Henderson*, 13 F.3d 528,

29

533 (2d Cir. 1994)); *see also Heron*, 2019 WL 1050011, at *13; *Jones v. Hollins*, 884 F. Supp. 758, 765–66 (W.D.N.Y. 1995) ("[T]he habeas court will not second-guess trial strategy simply because the chosen strategy has failed[.]"), *aff'd*, 89 F.3d 826 (2d Cir. 1995).

Accordingly, because Witherspoon has failed to satisfy either prong of *Strickland*, the Court recommends rejecting his ineffective assistance of counsel claim for failure to properly investigate a potential justification defense.

ii.    *Failure to Present Justification Defense*

"New York law recognizes a 'defense of justification . . . [that] affirmatively permits the use of force under certain circumstances.'" *Rodriguez v. Heath*, 138 F. Supp. 3d 237, 245 (E.D.N.Y. 2015) (quoting *McManus*, 67 N.Y.2d at 545), *aff'd*, 648 F. App'x 136 (2d Cir. 2016) (summary order). New York Penal Law § 35.15(2) states in relevant part that: "A person may not use deadly physical force upon another person . . . unless . . . [t]he actor reasonably believes that such other person is using or about to use deadly physical force." N.Y. Penal Law § 35.15(2) (2004). However, "[e]ven in such case . . . the actor may not use deadly physical force if he or she knows that with complete personal safety, to oneself and others he or she may avoid the necessity of so doing by retreating[.]" *Id.* The term "deadly physical force" is defined as "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(11) (2019).[16] In addition, under New York law, a justification defense is only warranted when, viewing the record in the light most favorable to the defendant, there is a reasonable view of the evidence that would permit a factfinder to conclude that the defendant's conduct was justified. *See, e.g.,*

---

[16] Although the Court cites to the current version of the Penal Law, the definition at the time of Witherspoon's trial and conviction was the same. *See* N.Y. Penal Law § 10.00(11) (2013).

*People v. Petty*, 7 N.Y.3d 277, 284 (2006); *People v. Cox*, 92 N.Y.2d 1002, 1004 (1998); *McManus*, 67 N.Y.2d at 549; *see also Jackson v. Edwards*, 404 F.3d 612, 622–23 (2d Cir. 2005).

Here, Witherspoon claims ineffectiveness because "[d]espite all of the available evidence," his counsel declined to present a justification defense, and instead presented a "prejudicial" defense to the jury, claiming that Shawn Bryant "shot himself, or was shot by one of his associates." (Pet. for Writ, ECF No. 1, at 7.)[17] Respondent, on the other hand, argues that this claim is meritless because (1) "counsel reasonably could have concluded the jury likely would have rejected the account as incredible," and (2) "[P]etitioner's belated claim that he shared this account with counsel itself lacks credibility." (Resp't's Opp'n, ECF No. 9-1, at 22.) Based on Witherspoon's own representations, his trial counsel appears to have weighed the merits of presenting a justification defense and communicated to Witherspoon that doing so would not provide the best chance of acquittal by the jury. (*See* Pet. for Writ, ECF No. 1, at 5, 7.) In addition, presenting such a defense would have contradicted counsel's theory of the case, i.e., that the prosecution failed to prove beyond a reasonable doubt that Witherspoon shot the victim. (*See, e.g.*, Tr., ECF No. 9-5, at 554:12–14.)

Reviewing the record as a whole demonstrates that counsel's decision to forgo the presentation of a justification defense was part of his trial strategy, which is to be afforded a presumption of soundness. *See Strickland*, 466 U.S. at 689. Accordingly, the

---

[17] As noted above, on direct appeal, the Second Department rejected Witherspoon's ineffective assistance of counsel claim based on his trial counsel's failure to request a justification charge at trial, concluding that "[v]iewing the record in the light most favorable to the defendant, no reasonable view of the evidence would support a finding that [Witherspoon's] actions were justified." *Witherspoon*, 47 N.Y.S.3d at 392.

Court declines to second-guess counsel's choice in hindsight. *See Sessoms*, 2017 WL 2861669, at *2; *Hollins*, 884 F. Supp. at 765–66.

In addition, even if the Court were to find that Witherspoon satisfied the first prong of *Strickland* in showing that counsel's determination not to pursue a justification defense was objectively unreasonable, Witherspoon would not be able to show that, but for counsel's error, the result of the proceeding would have been different. The only evidentiary support Witherspoon points to that would have directly supported his theory of self defense at trial is his own prior statements and testimony. *Cf. Simpson v. Bell*, No. 18-CV-1378 (ERK), 2021 WL 3849400, at *9 (E.D.N.Y. Aug. 27, 2021) (rejecting an ineffective assistance of counsel claim when "there was little evidence — other than petitioner's self-serving, evasive and contradictory testimony — supporting an inference that he was in danger of death or serious physical injury"); *Taylor v. Capra*, 412 F. Supp. 3d 126, 134 (E.D.N.Y. 2019) (noting that under New York law, "such evidence, standing alone, [is] insufficient to provide a basis for determining whether the defendant reasonably believed he was in imminent danger of being subjected to deadly physical force before shooting the victim" (citing *People v. Watts*, 57 N.Y.2d 299, 302 (1982)), *certificate of appealability denied*, No. 19-3662, 2020 WL 6554849 (2d Cir. May 14, 2020).

Moreover, even considering this evidence in the light most favorable to Witherspoon, there is no reasonable probability of a different outcome at trial. This is because, even if a jury were to fully credit Witherspoon's account that one of Bryant's associates was armed, there is no evidence establishing that Petitioner was in imminent danger of death or serious physical injury at the time he shot Bryant. Assuming the veracity of Witherspoon's version of the events of October 14, 2012, as reflected in his Article 440 motion, Witherspoon candidly concedes that he drew his gun first and that

no one else pulled out a gun in the basement at any time prior to when he shot Bryant. (*See* S.R., ECF No. 9-3, at 95–99.) *See Deleon v. Lempke*, No. 09-CV-2310 (BMC), 2009 WL 4498006, at *2 (E.D.N.Y. Dec. 2, 2009) (explaining that "[a] person who draws a gun during a heated argument can produce two responses — either he intimidates his adversary to back down, or he provokes his adversary into responding in kind. Either way, the person's next action is not entitled to a justification defense under New York law."), *aff'd*, 401 F. App'x 610 (2d Cir. 2010) (summary order). Further, "[t]he only way that the jury could have concluded that petitioner subjectively believed that he needed to use deadly force to protect himself . . . would have been by speculation," which is insufficient in the context of a justification defense. *Battee v. Phillips*, No. 04-CV-4334 (ENV), 2010 WL 2026443, at *8 (E.D.N.Y. May 20, 2010); *see also Deleon*, 2009 WL 4498006, at *2 (citing *People v. Alston*, 104 A.D.2d 653 (N.Y. App. Div. 2d Dep't 1984)).

For all of these reasons, Witherspoon has failed to satisfy either prong of *Strickland* with respect to his ineffective assistance of counsel claim for failure to present a justification defense, and the Court thus respectfully recommends rejecting this aspect of his ineffective assistance of counsel claim.

b) Petitioner's Summation Claim

The next basis on which Witherspoon claims ineffective assistance of counsel is grounded on the argument that trial counsel's summation remarks prejudiced Witherspoon. In his closing statement to the jury, counsel contended that Bryant "was shot by his own gun or by that of a friend or associate," even though the jury had already heard the Rikers Island call recordings and seen the corresponding transcripts in which Witherspoon claims to have shot Bryant. (Pet. for Writ, ECF No. 1, at 10; *see also* Tr., ECF No. 9-5, at 561:12–13; S.R., ECF No. 9-3, at 322.) During the summation at trial, counsel essentially argued that four facts helped prove this theory: (1) that Bryant

33

was at a party late at night; (2) that Bryant did not have a job; (3) that Bryant possessed a large amount of marijuana at the time of the shooting; and (4) that Bryant's self-described "bump" into Witherspoon and the subsequent scuffle indicated that Bryant was responsible for the gun that fired and injured him, and the jury thus could not conclude beyond a reasonable doubt that Witherspoon intentionally shot him. (Tr., ECF No. 9-5, at 561:12–563:8, 565:23–566:10.) Witherspoon describes his counsel's summation as "short," "confusing," and "based entirely on speculation," and claims that it deprived him of a fair trial and effective assistance of counsel. (Pet. for Writ, ECF No. 1, at 11.)

While "[t]he right to effective assistance extends to closing arguments," trial counsel maintains "wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (per curiam). "Judicial review of a defense attorney's summation is therefore highly deferential — and doubly deferential when it is conducted through the lens of federal habeas." *Id.*

Here, trial counsel's summation was consistent with a legitimate strategy to use Bryant's inebriation and the raucous setting of the house party to counter the prosecution's evidence. *See id.* ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." (citing *Strickland*, 466 U.S., at 690)); *see also Rodriguez v. LaValley*, No. 13-CV-5811 (RJD), 2019 WL 3718022, at *12 (E.D.N.Y. Aug. 7, 2019). Moreover, the Court notes that the argument appears to have been effective, at least in part, as the jury found Witherspoon not guilty of attempted murder in the second degree, the most serious of the charges he faced. (*See* Tr., ECF No. 9-5, at 625:25–626:2.)

As a result, the Court does not find a basis to disturb the state court's ultimate conclusion, in denying Witherspoon's Article 440 motion, that he "has not shown any prejudice from counsel's alleged failings or that there is any reasonable likelihood that the verdict would have been different in the alternative." (S.R., ECF No. 9-3, at 290.) *See also McCray v. Ercole*, No. 07-CV-6589 (DAB) (GAY), 2010 WL 6804661, at *5 (S.D.N.Y. Dec. 16, 2010) (finding that the state court "properly rejected petitioner's invitation to delve into the nuances of counsel's tactical decisions on the best strategy for sharpening and clarifying the . . . defense"), *report and recommendation adopted*, No. 07-CV-6589 (DAB) (GAY), 2011 WL 2496232 (S.D.N.Y. June 22, 2011).

c) Petitioner's Inadmissible Evidence Claim

Witherspoon also claims ineffectiveness because trial counsel failed to object to several pieces of evidence at trial, including: (1) hearsay that Bryant's friends had identified "Spoon," i.e., Witherspoon's nickname, as the gunman; (2) "implied but unambiguous hearsay" that Brianna Smoot, the host of the party, gave law enforcement a description of the gunman that matched Witherspoon; (3) "evidence that [Witherspoon] was already known to the police, which implied his prior criminality;" and (4) "hearsay in the Criminal Court affidavit that bolstered the victim's account of events." (Pet. for Writ, ECF No. 1, at 13.) When presented with these same claims on direct appeal, the Second Department found that:

> [T]he complainant's testimony and a detective's testimony about the circumstances under which they discovered the perpetrator's nickname, and how the nickname led to the defendant's arrest, did not provide evidence from which the jury would invariably conclude that the defendant had previously been convicted of a crime, and was admissible for the nonhearsay purpose of establishing the reasons behind the detective's actions, and to complete the narrative of events leading to the defendant's arrest.

*Witherspoon*, 47 N.Y.S.3d at 392. The Second Department also held that "trial counsel's

failure to request further redactions to those portions of the complaint that were read to

the jury did not amount to ineffective assistance of counsel, since an attorney is not

deemed ineffective for failing to pursue an argument that had little or no chance of

success." *Id.* Finally, the state appellate court concluded that "[w]hile trial counsel

should have requested a limiting instruction that this testimony [concerning

Witherspoon's nickname and how the nickname led to his arrest] should not be

considered for its truth, this single error was not sufficiently egregious and prejudicial

as to compromise the defendant's right to a fair trial, and, thus, did not render counsel's

performance ineffective." *Id.* at 393 (citations omitted). In addition, in denying

Witherspoon's Article 440 motion, the state court concluded that "the record as a whole

establishes that trial counsel's representation of defendant was both meaningful and

objectively reasonable." (S.R., ECF No. 9-3, at 291.)

Upon review of the entirety record, the Court agrees with the state court's

conclusion that trial counsel's performance was not constitutionally deficient. (*See id.* at

290–91.) Notwithstanding Witherspoon's dissatisfaction with the trial strategy,

counsel's performance here "fell well within the range of reasonably professional

assistance." *King v. Phillips*, No. 03-CV-6073 (NGG), 2008 WL 5272505, at *6 (E.D.N.Y.

Dec. 18, 2008). As discussed above, counsel succeeded in having Witherspoon's

videotaped confession suppressed, and, as a result of effective advocacy at the pre-trial

*Sandoval* hearing, successfully narrowed the scope of the prosecution's potential cross-

examination of Witherspoon as to his criminal history should he have decided to testify

at trial. (*See* Resp't's Opp'n, ECF No. 9-1, at 4–5; Tr., ECF No. 9-5, at 57–64.) In addition,

counsel also lodged lengthy objections to the admission of the criminal court affidavit

and the Rikers Island calls. (*See* Tr., ECF No. 9-5, at 496–506, 508, 542–43.) Furthermore,

as the Second Department noted, "an attorney is not deemed ineffective for failing to pursue an argument that had little or no chance of success." *Witherspoon*, 47 N.Y.S.3d at 392. In this case, for example, testimony related to Witherspoon's nickname and the computer search would likely have been deemed admissible for the "nonhearsay purpose of 'establishing the reasons behind the detective's actions, and to complete the narrative of events leading to the defendant's arrest.'" *People v. Speaks*, 1 N.Y.S.3d 257, 260 (N.Y. App. Div. 2d Dep't 2015) (quoting *People v. Ragsdale*, 889 N.Y.S.2d 681, 681–82 (N.Y. App. Div. 2d Dep't 2009)), *aff'd*, 28 N.Y.3d 990 (2016).

Moreover, even if the Court were to find that, in light of all the circumstances in this case, the alleged evidentiary errors "were outside the wide range of professionally competent assistance," Witherspoon has not established a substantial likelihood of a different outcome. *Nolan*, 956 F.3d at 79; *see also Garner*, 908 F.3d at 849. Assuming Witherspoon "could show that trial counsel's performance was deficient in any way, he does not come close to showing prejudice given the overwhelming evidence of his guilt," including the Rikers Island recordings in which he admits to shooting Bryant and Bryant's testimony against him. *Macaluso v. Keyser*, No. 18-CV-4830 (ERK), 2020 WL 8880941, at *6 (E.D.N.Y. Dec. 15, 2020) (citing *Wise v. Smith*, 735 F.2d 735, 739 (2d Cir. 1984)); *see also Ward v. Griffin*, No. 15-CV-2579 (AMD), 2018 WL 4688937, at *13 (E.D.N.Y. Sept. 28, 2018) (denying ineffective assistance of counsel claim where "petitioner has not demonstrated that he was prejudiced by his counsel's failure to object").

Lastly, as noted above, "[t]he operative question in reviewing a state court's *Strickland* ruling is . . . 'not whether a federal court believes the state court's determination was incorrect[,] but [rather] whether that determination was [objectively] unreasonable — a substantially higher threshold.'" *Waiters v. Lee*, 857 F.3d 466, 478 (2d

Cir. 2017) (alterations in original) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *see also Harrington*, 562 U.S. at 101. Based on the record in this case, the Court recommends denying Petitioner's claim that the state court's adjudication of his ineffective assistance of counsel claim for failure to object to purportedly inadmissible evidence was objectively unreasonable.

### d)    Petitioner's "Cumulative Effects" Claim

Finally, Witherspoon alleges that when taken together, the cumulative errors detailed in the prior three grounds constituted ineffective assistance of counsel. (Pet. for Writ, ECF No. 1, at 14.) "In limited circumstances, cumulative errors may serve as the basis for habeas relief." *Waiters v. Lee*, No. 13-CV-3636 (MKB) (SJB), 2018 WL 10811222, at *16 (E.D.N.Y. Oct. 3, 2018) (citing *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999)), *report and recommendation adopted*, No. 13-CV-3636 (MKB) (SJB), 2020 WL 3432638 (E.D.N.Y. June 23, 2020). However, in order to sustain such a claim, the Court must first conclude that "the alleged individual errors a petitioner seeks to aggregate are actually errors." *Id.* Because the Court recommends finding that trial counsel did not commit cognizable error, Witherspoon's cumulative error argument should likewise be denied. *See Fox v. Martuscello*, No. 16-CV-5416 (CBA), 2019 WL 4805527, at *12 (E.D.N.Y. Sept. 30, 2019); *Miller v. Graham*, No. 14-CV-5901 (KAM), 2018 WL 3764257, at *18 (E.D.N.Y. Aug. 8, 2018) ("Since this court has determined that none of petitioner's other ineffective assistance claims are meritorious, nor even appear to be errors of trial counsel, the state court's rejection of petitioner's ineffective assistance claims, individually and cumulatively, was not an unreasonable application of federal law.").

The Second Department found that "the evidence, the law, and the circumstances of this case, viewed in totality and as of the time of the representation, reveal that trial counsel provided the defendant with meaningful representation."

*Witherspoon*, 47 N.Y.S.3d at 392. Similarly, the Article 440 court concluded that "the record as a whole establishes that trial counsel's representation of defendant was both meaningful and objectively reasonable." (S.R., ECF No. 9-3, at 291.) For the reasons discussed herein, Witherspoon has failed to demonstrate that these conclusions involved an unreasonable application of federal law or unreasonable determinations of the underlying facts. Accordingly, the Court recommends finding that Witherspoon is not entitled to habeas relief due to a violation of his Sixth Amendment right to effective assistance of counsel.

**CONCLUSION**

In light of the foregoing, the Court respectfully recommends that Witherspoon's petition be denied in its entirety. The Court further recommends that no certificate of appealability be issued, as Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A copy of this Report and Recommendation will be mailed to Mr. Witherspoon at Five Points Correctional Facility.

\*    \*    \*    \*    \*

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir.

2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated:  Brooklyn, New York
            August 31, 2022

_Taryn A. Merkl_
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE